IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERNEST R. SILVA,

    Plaintiff,

vs.              CIVIL No. 03-0704 RLP

JO ANNE B. BARNHART,
Commissioner, Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

1. Plaintiff Ernest R. Silva brings this action pursuant to §§42 U.S.C. 405(g) and 1383(c)(3) seeking judicial review of the decision of Defendant, the Commissioner of Social Security, to deny his application for disability and disability insurance benefits under Title II of the Social Security Act. (Docket No. 8). For the reasons stated herein Plaintiff's Motion is denied.

**I.** **Procedural Background**

2. Plaintiff filed an application for disability income benefit on March 6, 2001, alleging an onset of disability of December 3, 2000, due to pain and dysfunction caused by deteriorating discs in his lumbar spine. (Tr. 61, 70). His application was denied twice on administrative review, and by an Administrative Law Judge ("ALJ" herein). (Tr. 44-50, 52-55; Tr. 9-17). On April 11, 2003, the Appeals Council declined to review the ALJ's decision (Tr. 4-6) rendering the April 11, 2003, denial of benefits the final decision of the Commissioner of Social Security.

**II.** **Factual Background**

  A. <u>Medical history prior to date of alleged onset of disability.</u>

3. Plaintiff initially injured his back in the fall of 1999. (Tr. 116). An MRI study performed on September 21, 1999, documented disc disease at L3-4, L4-5 and L5-S1, without herniation. (Tr.



208). Neurosurgeon Mario Gutierrez examined Plaintiff on January 6, 2000. (Tr. 119-120). Plaintiff had been off work from his job as a auto parts salesman for five weeks at that time. He stated that his pain was moderate and had been treated conservatively with adjustments and medication. He also complained of tingling but no weakness in his right leg. On physical examination he walked normally, had normal posture, range of motion, sensation, 5+ motor strength in both legs, no muscle atrophy or fasciculation, negative straight leg raise to 90 degrees, and decreased reflexes in his right ankle and knee. Dr. Gutierrez concluded that the September 1999 MRI demonstrated degenerative disc disease from L3 to S1, spurring which was most severe at L4-5, disc protrusion and some stenosis. He recommended non-surgical modes of treatment and consideration of referral to pain clinic. In terms of Plaintiff's ability to work, Dr. Gutierrez wrote:

> . . . I think that the patient can do light duty work avoiding bending, twisting and lifting. After a trial of physical therapy, and in another 3 weeks he may be able to do regular duty with caution when bending and lifting. I think that he can not bend excessively and should use body mechanics and bend his knees (squat rather than bend). He may require breaks if he is required to stand sit or walk more than 2 hr. straight at work. He will have to be gradually break (sic) into going back to the regular job with progressive increase in load of work.

(Tr. 120).

4.      Plaintiff was injured in a car accident in May 2000 (Tr. 140-147, 254), and was treated with medication and physical therapy. (Tr. 250). He exacerbated his low back pain lifting a garage door in December 2000. He was again treated with medication and physical therapy. (Tr. 250-251).

B.      Medical history following the date of alleged onset of disability.

5.      In a Disability Report submitted with his application for benefits in March 2001, Plaintiff stated that he stopped working on February 15, 2001, and that he suffered from low back pain, leg pain, and an inability to sit for long periods of time or walk. (Tr. 70, 77). He was being treated by

Dr. Raes with medication, physical therapy, and a referral to an acupuncturist. (Tr. 251). Dr. Raes referred him to Robert Hurley, M.D., on May 4, 2001[1]. Id. Dr. Hurley diagnosed chronic low back pain and probable chronic biomechanical low back pain, and referred Plaintiff for a functional capacities evaluation performed at Sprint Sports Rehabilitation. Id. While the written evaluation in not contained in the administrative record, it was reviewed and discussed by an examining physician, Dr. Diskant. Dr. Diskant stated that the evaluation indicated that Plaintiff was able to lift 40 pounds, but had "other significant limitations includ(ing) trunk mobility, stooping and extended periods of sitting and standing." (Tr. 252). Plaintiff was treated by Dr. Hurley on July 24, 2001, following a flare up of back pain while at work in the parts department of an auto dealership. Dr. Hurley who released him to unrestricted duty, provided he not lift or carry over 40 pounds. Id.

6. Plaintiff was evaluated by R.E. Pennington, M.D., Ph.D.[2], on August 31, 2001. (Tr. 228-231). Dr. Pennington noted that Plaintiff had recently undergone extensive physical therapy, was taking *Vioxx*[3], had been given numerous injections of *Toradol*[4], and had tried acupuncture which did not improve his back pain. Plaintiff described pain radiating from his back to his hips and legs which became severe if he sat for prolonged periods, and an inability to lie in bed. On physical

---

[1] On exam, Plaintiff had gull active and passive of his lumbar spine, intact strength of reflexes in his lower extremities, taut paraspinal muscles and no radicular complaints on straight leg raising. He was able to walk normally and heel/toe walk.

[2] Dr. Pennington and two other physicians, Dr. N. Alexander and Dr. K. Balkman are associated with Adobe Medical. His stationary lists the areas of practice of Adobe Medical "Physical Medicine & Rehabilitation" and "Pain & Spine Specialists." (Tr. 228).

[3] *Vioxx* is indicated for the treatment of acute pain and pain associated with osteoarthritis. www.fda.gov/cder/consumerinfo/druginfo/vioxx.htm.

[4] "*Toradol* is indicated for the short-term (less than 5 days) management of moderately severe acute pain that requires analgesia at the opioid level . . ." 1999 Physicians' Desk Reference, at 2717.

examination, Plaintiff's straight leg raise test was positive bilaterally and he had pain with lateral bending to the left. Dr. Pennington diagnosed degenerative disc disease with lumbar radiculopathy, with pain coming from the disc. While initiating several modes of treatment[5], Dr. Pennington released Plaintiff to return to "a modified duty status and light duty... (using) caution especially with heavy lifting." (Tr. 229).

7. Plaintiff was examined by Dr. Pennington or a member of his group, Dr. Karen Balkman or Dr. N. Alexander, approximately once a month through July 2002. Their physical findings are set out in Exhibit 1. Plaintiff continued to complain of pain and demonstrated positive though variable signs consistent with pain caused by degenerative disc disease with radiculopathy. Nonetheless, Dr. Balkman released him to light duty work on December 27, 2001.[6] (Tr. 220).

8. Barry Diskant, M.D., a specialist in disability evaluation and pain management, evaluated Plaintiff on July 15, 2002, in connection with Plaintiff's workers' compensation claim. (Tr. 249-264). Dr. Diskant reviewed extensive medical records, took a detailed history, reviewed radiologic studies and performed and documented a thorough physical examination. As of the date of this evaluation, Plaintiff was taking one *Vicodin*, a narcotic analgesic, nightly for pain. Other pain

---

[5]Dr. Pennington recommended additional work up, including guided discogram and electrodiagnostic testing, injected and iced the lumbar paraspinal muscles, continued *Vioxx* and prescribed *Ultram*, a pain medication, and *Baclofen*, a muscle relaxant. (Tr. 229).

[6]The form prepared by Dr. Balkman, light duty is defined as:

Lifting 20 lbs. maximum with frequent lifting and/or carrying of objects weighing up to 10 lbs. Even through the weight lifted may be only a negligible amount, a job is in this category when it requires walking or standing to a significant degree or when it involves sitting most of the time with a degrees of pushing an pulling of arm and/or leg controls. (Tr. 221).

This definition is in all material respects identical to the definition of light work found at 20 C.F.R. §1567(b).

medication had been discontinued due to potential side effects. *Id.* Dr. Diskant noted numerous signs and symptoms consistent with the presence of pain(Tr. 256-259) and concluded that Plaintiff experienced moderately severe pain. (Tr. 259). He diagnosed the following conditions:

(1) multilevel lumbar disc degeneration and bulging without evidence of lumbar spinal stenosis,

(2) multilevel facet arthropathy with radiographic evidence of narrowing of the left L5-S1 neural foramen,

(3) L5 radiculitis per EMG/NCV study,

(4) Multilevel lumbar spondylosis, and

(5) Mechanical low back pain.

(Tr. 260).

Dr. Diskant felt that surgery was not appropriate given the presence of disc disease at multiple levels, and recommended *Vioxx* in addition to *Vicodin*, as well as referral to a physiatrist. Dr. Diskant stated that Plaintiff should be walking on a regular basis and was

> ". . .capable of returning to work within the <u>light</u> physical demand category as defined by the New Mexico Workers' Compensation Statutes. Section 52-1-26.4. He may lift up to 20 pounds occasionally, 10 pounds frequently, and a negligible amount constantly."[7]

(Tr. 261) (emphasis in the original).

---

[7]Section 52-1-26.4(3), N.M.S.A 1978, (2003) defines "light" physical capacity as

". . .the ability to lift up to twenty pounds occasionally or up to ten pounds frequently. Even through the weight lifted may be a negligible amount, a job is in this category when it requires walking or standing to a significant degree or when it involves sitting most of the time with a degree of pushing and pulling arm or leg controls or both."

This definition is in all material respects identical to the definition of light work found at 20 C.F.R. §1567(b).

C.      Plaintiff's evidence/testimony

9.      Plaintiff was born on September 14, 1948. He obtained a GED in 1977. He has past relevant employment as an insurance agent (1977-1992) and auto parts salesman (1992-2001). (Tr. 61, 76, 71). Plaintiff described the physical requirements of his job as an insurance agent as getting in and out of his car all day, lifting at most ten pounds at a time, frequently lifting less than 10 pounds, and walking, standing, sitting, stooping, and crouching throughout an eight hour period. (Tr. 71).

10.     Plaintiff testified that continued to see Dr. Pennington for pain medication. (Tr. 32). Functionally, he stated that he sometimes used crutches, drove a car twice each day on short trips, was able to lift a gallon of milk, kneel or squat with support, bend from a sitting position, walk down three steps, sit for 1½ hours, be on his feet moving around for no more than 2 hours and walk for 4 blocks. He does some cooking. (Tr. 29, 33, 36, 39-41).

### III.    ALJ's Decision

11.     The ALJ found that despite significant earnings in 2001 (Tr. 13, 67), Plaintiff had not engaged in substantial gainful activity at any time relevant to his claim for disability insurance benefits. (Tr. 14). In other words, that he had not engaged in substantial gainful activity since the date of his alleged onset of disability, December 3, 2000. The ALJ determined that Plaintiff had a severe impairment, multilevel degenerative disc disease, which did not meet or equal the severity of a listed impairment. The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible, and that Plaintiff he had the residual functional capacity ("RFC" herein) for light work. Finally, the ALJ determined that Plaintiff's past relevant work as an insurance salesman was not precluded by his RFC, and therefore he was not under a disability as defined by the Social Security Act.

## IV. Issues on Appeal

12. Plaintiff contends substantial evidence does not support the ALJ's assessment of the credibility of his complaints of pain, and that the ALJ applied incorrect legal principle by substituting his opinion for that of treating physicians. He also contends that the ALJ erred in evaluating his residual functional capacity.

## V. Standard of Review.

13. The Social Security Act provides that final decisions of the Commissioner shall be subject to judicial review. *42 U.S.C. §405(g)*. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . " *Id.* I review the Commissioner's decision to determine only whether the decision is supported by substantial evidence and whether correct legal standards were applied. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable man might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The determination of whether substantial evidence supports the Commissioner's decision is not a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). I will not reweigh the evidence, but will examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision in order to determine if the decision is supported by substantial evidence. *Glenn*, 21 F.3d at 984.

14. Plaintiff has the burden of proving a disability which prevents him from engaging in his prior work for a continual period of twelve months. *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992).

7

15. Credibility determinations by the ALJ normally deserve deference. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir.1992).

**VI.   Discussion.**

16. The ALJ accepted that Plaintiff suffered from painful multilevel degenerative disk disease with radiculopathy. (Tr. 16). In evaluating disabling nature of this impairment, the ALJ did not ignore the medical evidence, nor did he substitute his opinion for that of medical professionals. To the contrary, in assessing Plaintiff credibility and residual functional capacity, the ALJ referred to and relied upon the findings of physicians who evaluated Plaintiff during the relevant period, Drs. Diskant, Hurley and Pennington, and he considered the functional capacity evaluation performed by Spring Sports Rehabilitation. (Tr. 14-15). The ALJ must give substantial weight to the evidence of a claimant's treating physicians unless good cause is shown to the contrary. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). No good cause has been shown that would negate the deference the ALJ owed to the evidence contained in the records of Drs. Diskant, Hurley and Pennington, and the evaluation of Spring Sports Rehabilitation.

17. The ALJ noted that all Plaintiff's treating physicians felt he had significant residual functional capacity, taking into account the pain component of his back impairment. The ALJ stated, "While their (sic) have been some differences in their overall assessments, all physicians believe that the claimant can perform work within the light work category with some possible mild modifications." (Tr. 15). Substantial evidence supports the ALJ's finding. (See ¶¶ 5,6,7 & 8, *supra*).

18. Plaintiff argues that the ALJ erred in disregarding his subjective testimony regarding pain. The ALJ discussed Plaintiff's testimony regarding his functional abilities. (Tr. 14, see ¶10, *supra*).

8

If believed, Plaintiff would be unable to perform light work, that is, work that involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. 20 C.F.R. §404.1567(b). The ALJ concluded that Plaintiff's subjective complaints were not credible to the extent they were inconsistent with the assessments of the treating and examining doctors:

> It is apparent that the claimant does suffer some pain and resultant limitation of function. (I) cannot find that the claimant is limited to the decree (sic) noted in his testimony. The attending physicians have been informed by the claimant regarding his pain and have completed their assessment of the claimant's functional capacity considering such pain complaints. (I) find that the attending physicians are in a much better position to access (sic) the claimant's overall functional capacity of (sic) considering such factors as pain and resultant limitation of function.

(Tr. 15)

19. In reviewing such a credibility determination, courts should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991). I find no reason to disturb the ALJ's findings in this case.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand [Docket No. 8] is denied and the decision of the Commissioner denying Plaintiff's application for disability insurance benefits is affirmed.

                                                **RICHARD L. PUGLISI**
                                          **UNITED STATES MAGISTRATE JUDGE**
                                            **(sitting by designation)**

Exhibit 1, p. 1 of 2

| | 8/31/01 Pennington Tr. 228-230 | 10/8/01 Balkman Tr. 226 | 11/6/01 Balkman Tr. 225 | 11/27/01 Pennington Tr. 224 | 12/10/01 Pennington Tr. 223 | 12/27/01 Balkman Tr. 220 |
|---|---|---|---|---|---|---|
| Straight Leg Raise | (+) bilat. L>R | (-) bilat. | (-) bilat. | | (+) SLR on R to about 15° | (+) on R, pain w/ lateral bend & forced hyper-extension |
| Pain | w/ lateral bend to L | no tenderness to palpation, but equal > pain with forward flexion or extension | no tenderness to back; pain w/ lateral bend to L & R | | w/ lateral bending and extension | no real pain w/ deep palpation, pain with forward flexion at 20° |
| Range of Motion | | pulling in back w/ forward flexion | guarded on forward flexion; full in lower extremities | | severe guarding, < ROM all planes. Forward flexion limited to 10° | sign. muscles guarding lower back |
| Sensory | | intact for lt. touch & vibratory sense | | | | |
| Reflexes | patella & Achilles 1+ | 1-2+ patella & Achilles, symmetric | 1+ patella & Achilles, symmetric | | 1+ patella & Achilles | 2+ patella & Achilles, symmetric |
| Gait | Can ambulate on heels/toes w/ relatively balance & proprioception | able to heel/toe walk | able to heel/toe walk | | markedly antalgic w/ limited motion | antalgic, unable to heel/toe walk |
| Motor strength | | 5/5 normal | 5/5 normal | | | |
| Imp/Dx | DDD w/ lumbar radiculopathy; lumbar strain | DDD multiple levels w/ lumbar radiculopathy | DDD w/ lumbar radiculopathy | EMG testing consistent w/ chronic L5 radiculopathy on L | DDD with lumbar radiculopathy | L5 Radiculopathy. DDD |

10

Exhibit 1, p. 2 of 2

|  | 1/18/02 Pennington Tr. 216 | 2/25/02 Pennington Tr. 214 | 3/28/02 Alexander Tr. 211 | 4/29/02 Pennington Tr. 272 | 7/5/02 Alexander Tr. 268 | 7/8/02 Balkman Tr.270 |
|---|---|---|---|---|---|---|
| Straight leg raise |  |  | (-) bilat. |  | (-) bilat. | (-) bilat. |
| Pain |  | pain w/ forward flexion | lumbar paraspinals, tender to touch, R>L | pain on lateral bending |  | tender to palpation L5-S1 paralumbar w/ min. tenderness L4-5 & central vertebral area |
| Range of Motion | mild muscle guarding esp. w/ forward flexion | muscle guarding | moderate muscle guarding lumbar paraspinals. | mild muscle guarding | mild contracture R leg, stable LE joints | 20-30° forward flexion, 20° lateral flexion due to fear of pain |
| Sensory | intact | intact | grossly intact | intact | < on right L1, L2, L5 & S1 dermatomes | intact for light touch & vibratory sense |
| Reflexes | DTR 1+ | DTR 1+ | trace (b) patella; 1+ Achilles | DTR 1+ | 1+ & symmetric patella | 1+ & symmetric patella, 1+ Achilles (b) |
| Gait | able to ambulate with relatively stable balance & proprioception |  |  |  | Good, coordinated gait, station, balance & proprioception. Walks w/ stiff back | mildly antalgic. Does not make use of assist device |
| Motor strength | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 w/ no spasticity, cogwhill tightening or flaccidity | 5/5, normal |
| Imp/Dx | Lumbar radiculitis w/ DDD | Lumbar radiculitis w/ DDD | Lumbar radiculitis w/ DDD | DDD with radiculitis | DDD w/ radiculitis | DDD with L5 radiculitis |

11